IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **KEVIN WILLS,** | |
| Plaintiff, | |
| vs. | Civil Action No. |
| | JURY TRIAL DEMANDED |
| **ACCURATE BACKGROUND, LLC** formerly doing business as **ACCURATE BACKGROUND, INC.** | |
| Defendant. | |

## COMPLAINT

COMES NOW the plaintiff, KEVIN WILLS ("WILLS"), and alleges that the defendant, ACCURATE BACKGROUND, LLC, ("ABI") violated the Federal Fair Credit Reporting Act 15 U.S.C. §§ 1681 et seq.

### I.   INTRODUCTION

**1.** WILLS claims are based upon ABI's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"). ABI is regulated as a consumer reporting agency ("CRA") under the FCRA. *See* 15 U.S.C. § 1681a(f). CRA's like ABI are required to maintain reasonable procedures to assure maximum possible accuracy of the information reported on consumers. *See* 15 U.S.C. § 1681e(b). In a nation of approximately 320,000,000 people, it is common for consumers to share similar sounding names, dates of birth and other common

identifiers. With these endless commonalities, a CRA must have procedures that implement appropriate algorithms or matching criteria to assure that the report it sells to employers is accurate and references the precise individual consumer in question and not mixed up with third parties that may share similar identifying information.

**2.** ABI failed to maintain reasonable procedures to assure the maximum possible accuracy of the information it sold about WILLS to his prospective employer, ultimately causing him to lose a job he would have otherwise obtained but for the erroneous background report provided to Starbucks.

## II. JURISDICTION AND VENUE

**3.** Jurisdiction arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

**4.** Venue is proper in this judicial district, as ABI sells consumer reports to employers such as Starbucks throughout this judicial district.

## III. PARTIES

**5.** WILLS is a Georgia Resident and a "consumer" as that term is defined in the FCRA.

**6.** Defendant ABI is a limited liability company organized under the laws of the State of California which was formed on or about October 14, 2014 according to a Certificate of Status executed by the California Secretary of State and filed by ABI with the Florida Secretary of State.

7. Defendant ABI had operated for many years as a corporation prior to its conversion from an incorporation to a limited liability company.

8. ABI currently maintains its headquarters at 7515 Irvine Center Drive, Irvine, CA 92618.

9. ABI has maintained the same officers and Irvine headquarter location during its conversion from being a corporation to a limited liability company.

10. ABI may be served by personal service on its CEO, David Dickerson or its CFO Piero Broccardo, or on any other officer or authorized agent at its Irvine California headquarters.

11. Alternatively, ABI may be served by personal service on its registered agent in Florida, to wit: C T Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

12. ABI operates as a nationwide consumer reporting agency providing comprehensive screening services and is governed by the FCRA.

13. ABI sells background screening reports on prospective employees to Starbucks Restaurants in the Metro Atlanta Area.

### IV. FACTUAL ALLEGATIONS

14. ABI compiles and maintains files on thousands of consumers, which it then sells to employers who use the information to make hiring decisions about prospective employees.

15. ABI's database contains vast amounts of information about individual consumers that it compiles into reports and sells, including information about where the consumer resides, the consumer's age, social security number, date of birth, employer and employment history, criminal history, economic profile data regarding the consumer's home and neighboring properties, bankruptcy records, lien and judgment records, UCC filings, other public records, professional licenses, accident history, recreational permits, and general information about the consumer's assets and property.

16. Among other things, the FCRA regulates the collection, maintenance, and disclosure of such information by CRAs.

17. The FCRA requires a CRA to maintain procedures to assure maximum possible accuracy, including procedures to ensure that erroneous third party data –or "mixed file" data – is not reported in an individual's consumer report.

18. Matching criteria must exclude reporting data about individuals who share common or similarly sounding names as the subject consumer.

19. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

**20.** When a CRA sells a report for employment purposes and that report contains public-record information that is "likely to have an adverse effect upon a consumer's ability to obtain employment," section 15 U.S.C. § 1681k(a) of the FCRA mandates that the CRA take one of two actions:

    a.    at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public-record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

    b.    maintain strict procedures designed to insure that whenever public record information, which is likely to have an adverse effect on a consumer's ability to obtain employment, is reported, it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens and outstanding judgments shall be considered up-to-date if the current public-record status of the item at the time the report is provided.

21. ABI did not maintain strict procedures designed to ensure that it would only furnish or include in its reports sold to employers, complete and up to date public records information to avoid mixing information of prospective employees with third parties.

22. For example, ABI did not maintain any strict procedure designed to ensure that it does not furnish a public record if it has not actually contacted the original source of public records information (*e.g.*, the Court clerk) immediately before furnishing a report which includes such information, or if it includes and furnishes public records that are incomplete because they lack a social security number, or if what ABI provides is an incomplete version of what it actually received because it does not disclose to its customer information as to whether or not it possesses an associated social security number.  Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer report at issue in this case.

23. ABI knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

24. ABI obtained or had available substantial written materials that apprised it of its duties under the FCRA.

25. Despite knowing of these legal obligations, ABI acted consciously in breaching its known duties and deprived WILLS of his rights under the FCRA.

26. ABI markets its National Criminal Database background reports as being created from a "proprietary database" compiled from court records across that nation, painting a picture that is sells a remarkable and accurate consumer reporting product. S*ee* http://accuratebackground.com/products/background-screening/criminal-searches/ (last viewed January 18, 2016)

27. ABI does not disclose in its marketing that it lacks the procedures to ensure that the records it compiles pertain to the reported upon individual.

28. ABI often provides the employer with erroneous data online, nearly instantaneously, while any communications with consumers are placed in the mail days later, or never at all.

29. Thus, in most instances, the employer obtains its copy of the ABI report and has made a negative hiring decision before the consumer is even aware that the report was provided to the employer.

## V. KEVIN WILLS'S EXPERIENCE

30. WILLS applied for a job with Starbucks in September, 2015. After a positive interview, WILLS was preliminarily hired pending a background report. Having no criminal history, he did not anticipate any problem with his report.

31. Starbucks obtained and used a background report prepared by ABI to make an employment decision regarding WILLS.

**32.** The consumer report provided to Starbucks relating to WILLS, included a statement that Kevin W. *Willis* of Minnesota had been convicted twice of domestic violence.

**33.** WILLS does not spell his name like Kevin *Willis*, nor has he ever resided in Minnesota.

**34.** WILLS has never been convicted of domestic violence or any other crime.

**35.** Upon receipt of the consumer report, Starbucks took adverse employment action against WILLS by having the local store manager inform him that he could not work for Starbucks.

**36.** The representative of Starbucks explicitly stated that the criminal history on his consumer report disqualified him from working for the coffee house.

**37.** On September 22, 2015, several days after being orally declined employment, WILLS received a letter from ABI on behalf of Starbucks enclosing a copy of his background report.

**38.** ABI did not provide WILLS notice that a public-records based consumer report with derogatory information was sent to Starbucks 'at the same time' Starbucks received it.  Instead, WILLS received notice of the report a number of days after Starbucks had already declined his employment.

39. WILLS, recognizing that ABI erroneously reported him as a domestic abuser from Minnesota, disputed the report.

40. Nonetheless he lost the job opportunity with Starbucks.

## COUNT I - VIOLATION OF 15 U.S.C. § 1681E(B)

41. WILLS reiterates each of the allegations in the preceding paragraphs as if set forth fully herein.

42. WILLS'S report contained erroneous information that caused Starbucks to deny him employment.

43. ABI violated 15 U.S.C.§ 1681e(b) as to WILLS by failing to establish, follow and use reasonable procedures to ensure that his consumer report was maximally accurate.

44. As a result of ABI's Conduct, WILLS suffered actual damages, including without limitation, by example only, and as described herein on his behalf by counsel, loss of income and equity, damage to reputation, embarrassment, humiliation, frustration and other emotional and mental distress.

45. ABI's violation of 15 U.S.C. § 1681e(b) was willful and/or reckless, rendering ABI liable for damages under 15 U.S.C. § 1681n.

46. In the alternative, ABI was negligent, entitling WILLS to recover damages under 15 U.S.C. § 1681o.

47. WILLS is entitled to recover actual and/or statutory damages, punitive

damages, costs and attorney's fees from ABI in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II- VIOLATION OF 15 U.S.C. § 1681K

48. WILLS reiterates each of the allegations in the preceding paragraphs as if set forth fully herein.

49. Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon his ability to obtain or maintain employment, ABI failed to provide notice "at the time" of the fact that derogatory public record information was being reported, together with the name and address of the person who received the information.

50. Upon information and belief, ABI did not attempt to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court Clerk) immediately before furnishing a report which includes such information. Further, it would require the pre-existing maintenance and design of strict procedures to ensure that ABI only reported the complete public record. 15 U.S.C. §1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

51. ABI's failure to timely provide the required FCRA notices to WILLS violated 15 U.S.C. § 1681k(a).

**52.**     ABI's conduct, action and inaction was willful and/or reckless, rendering ABI liable for damages pursuant to 15 U.S.C. § 1681n.

**53.**     In the alternative, ABI was negligent, entitling WILLS to recover damages under 15 U.S.C. § 1681o.

**54.**     WILLS is entitled to recover actual and/or statutory damages, punitive damages, costs and attorney's fees from ABI in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE**, WILLS prays that the Court enter judgment in his favor on all counts against ABI, and award him:

  a. Actual damages;

  b. Punitive damages;

  c. Attorney's fees, expenses and costs; and

  d. Any other relief this Court deems equitable and just.

>Respectfully Submitted,
>
>**SKAAR & FEAGLE, LLP**
>
>By:   /s/ James M. Feagle
>        James M. Feagle
>        Georgia Bar No. 256916
>        jfeagle@skaarandfeagle.com
>        Cliff Dorsen
>        Georgia Bar No. 149254
>        cdorsen@skaarandfeagle.com
>        2374 Main Street
>        Suite B
>        Tucker, GA 30084

404 / 373-1970
404 / 601-1855 fax


Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
kskaar@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA  30189
770 / 427-5600
404 / 601-1855 fax

**O'TOOLE, McLAUGHLIN, DOOLEY & PECORA, CO., LPA**
(Petitions for Pro Hac Vice Forthcoming)

Matthew A. Dooley
Anthony R. Pecora
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:   (440) 930-4001
Facsimile:    (440) 934-7208
Email: apecora@omdplaw.com
           mdooley@omdplaw.com

*Counsel for Plaintiff*

404 / 373-1970
404 / 601-1855 fax


Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
kskaar@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA  30189
770 / 427-5600
404 / 601-1855 fax

**O'TOOLE, McLAUGHLIN, DOOLEY & PECORA, CO., LPA**
(Petitions for Pro Hac Vice Forthcoming)

Matthew A. Dooley
Anthony R. Pecora
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:   (440) 930-4001
Facsimile:    (440) 934-7208
Email: apecora@omdplaw.com
           mdooley@omdplaw.com

*Counsel for Plaintiff*